UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JESSE EUGENE JONES,

                    Petitioner,

v.                                              Case No. 01-71602
                                                HONORABLE AVERN COHN
CATHY BAUMAN,

                    Respondent.

_____/

**MEMORANDUM AND ORDER DENYING THE HABEAS PETITION,
AND
DENYING A CERTIFICATE OF APPEALABILITY,
AND
GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

I. Introduction

This is a habeas case under 28 U.S.C. § 2254.  Petitioner Jesse Eugene Jones

is challenging his state convictions for murder in the second degree, assault with intent

to commit murder, and possession of a firearm during the commission of a felony.

Respondent contends that Petitioner's claims are procedurally defaulted, waived, not

cognizable on habeas review, or without merit.  The Court agrees that Petitioner is not

entitled to the relief he seeks.  The petition will therefore is denied.  The reasons follow.

II.  Background

A.

Petitioner was charged in Wayne County, Michigan with first-degree murder,

assault with intent to commit murder, and possession of a firearm during the

commission of a firearm.  The charges arose from allegations that Petitioner fired a gun

at Kobieya Lilly and killed Lilly's friend Kyruden Robinson on May 22, 1995, in Detroit.

The first-degree murder charge was reduced to second-degree murder before trial.

Following a jury trial in Wayne County Circuit Court in 1997, Petitioner was convicted of

second-degree murder, Mich. Comp. Laws § 750.317, assault with intent to commit

murder, Mich. Comp. Laws § 750.83, and possession of a firearm during the

commission of a felony, Mich. Comp. Laws § 750.227b.  The trial court sentenced

Petitioner to two years in prison for the felony firearm conviction, followed by concurrent

terms of seventeen to twenty-five years for the murder and assault convictions.

In an appeal of right, Petitioner argued that (1) the prosecutor erroneously

impeached a defense witness, (2) the prosecutor engaged in other misconduct, (3) the

trial court deprived him of a fair trial by failing to dismiss a juror for cause, (4) the trial

court should have declared a mistrial on the basis of a juror's contact with the father of

the decedent, (5) the "struck jury" method of jury selection deprived him of his right to

due process, (6) the trial court erroneously admitted evidence that Petitioner attempted

to evade arrest, and (7) the verdict was contrary to the great weight of the evidence.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished

decision.  People v. Jones No. 209512 (Mich. Ct. App. Aug. 13, 1999).  Thereafter,

Petitioner retained new appellate counsel, who filed a motion for rehearing and a motion

to add a claim regarding trial and appellate counsel.  The Court of Appeals denied both

motions.  People v. Jones, No. 209512 (Mich. Ct. App. Oct. 25, 1999) (unpublished)

Petitioner then applied for leave to appeal in the Michigan Supreme Court,

presenting the same claims that he raised in the Michigan Court of Appeals.  He also

2

moved for permission to add claims about trial and appellate counsel. The Michigan Supreme Court denied leave to appeal, as well as, Petitioner's motion to add claims. People v. Jones, 622 N.W.2d 523 (Mich. 2000) (table).

B.

On April 25, 2001, Petitioner filed a federal habeas corpus petition through counsel. He claimed that (1) the prosecutor's misconduct deprived him of a fair trial and due process, (2) the trial court and defense counsel deprived him of a fair trial by allowing a state court administrator to remain on the jury panel, (3) the trial court deprived him of a fair trial by denying his motion for a mistrial after a juror admitted to discussing the case with a third party, (4) the trial court violated Michigan Court Rule 2.511(F) during voir dire and defense counsel was ineffective for failing to object, (5) the trial court abused its discretion by admitting evidence that he avoided arrest, (6) there was insufficient evidence at trial to support his conviction, and (7) he was denied his right to effective assistance of trial and appellate counsel. Respondent argued that Petitioner's claims were not cognizable on habeas review, were unexhausted or procedurally defaulted, and lacked merit.

On May 6, 2002, the Court dismissed the petition without prejudice because Petitioner had failed to exhaust state remedies for his ineffective-assistance-of-counsel claims. The Court did not provide Petitioner with a deadline for returning to state court. The Court did say, however, that Petitioner could move to reopen his case if he did so within sixty days of exhausting state court remedies and that, if the motion to reopen were granted, the original filing date of the petition would apply to the reopened case.

C.

3

On or about November 14, 2006, Petitioner filed a motion for relief from judgment in which he alleged that (1) the magistrate filed an improper return, (2) the prosecutor filed an invalid information, (3) the arrest warrant was invalid, (4) the complaint was erroneous, and (5) he received ineffective assistance of trial and appellate counsel. The trial court denied his motion in a reasoned opinion, and the Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). People v. Jones, No. 279976 (Mich. Ct. App. Mar. 10, 2008). The Michigan Supreme Court denied leave to appeal for the same reason. People v. Jones, 754 N.W.2d 879 (Mich. 2008).

D.

On November 12, 2008, Petitioner returned to federal court. Although Petitioner put case number 01-71602 on the form accompanying his petition, the Clerk's office erroneously assigned a new case number, 08-14758. The 2008 case was assigned to another judge in this district. After the 2008 case was reassigned to the undersigned, the Court granted Petitioner's motion to re-open his 2001 case and dismissed the 2008 case.

III.  Timeliness

Petitioner's failure to exhaust state remedies for his claims until more than four years after the Court dismissed his first habeas petition arguably precludes him from asserting his claims now. See Rhines v. Weber, 544 U.S. 269, 278 (2005) (explaining that district courts should place reasonable time limits on a petitioner's trip to state court and that, without time limits, petitioners could drag out federal habeas review indefinitely and frustrate 28 U.S.C. § 2254(d)'s goal of finality). However, neither the statute-of-

4

limitations defense, see 28 U.S.C. § 2244(d), nor the doctrine of procedural default are

limitations on the Court's authority to adjudicate Petitioner's claims.   Holland v. Florida,

__ U.S. __, __, 130 S. Ct. 2549, 2560 (2010) (quoting Day v. McDonough, 547 U.S.

198, 205 (2006)) (the statute-of-limitations defense); Pudelski v. Wilson, 576 F.3d 595,

606 (6th Cir. 2009) (the doctrine of procedural default), cert. denied, __ U.S. __, 130 S.

Ct. 3274 (2010).  Consequently, the Court will excuse the alleged procedural errors and

adjudicate Petitioner's claims on their merits.

IV.  Standard of Review

Habeas petitioners are entitled to the writ of habeas corpus only if the state

court's adjudication of their claims on the merits

> (1)    resulted in a decision that was contrary to, or involved an
>        unreasonable application of, clearly established Federal law,
>        as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
>        determination of the facts in light of the evidence presented
>        in the State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-

06 (2000).  An "unreasonable application" occurs when "a state-court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

Id. at 409.

"[A] federal habeas court may not issue the writ simply because that court

5

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  "[W]here factual findings are challenged, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct."  Goodwin v. Johnson, 632 F.3d 301, 308 (6th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1) and Landrum v. Mitchell, 625 F.3d 905, 914 (6th Cir. 2010)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, __ U.S. __, __, 131 S. Ct. 770, 786 (2011).  To obtain a writ of habeas corpus, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786-87.

### V.  Petitioner's Claims

### A.  Juror Impartiality

Petitioner alleges that his rights to a fair trial and due process of law were violated when prospective juror Gloria Johnson-Ruckes was permitted to remain on the jury panel even though she was employed as a state court administrator for the 36th District Court.  Petitioner contends that the trial court personally knew Ms. Johnson-Ruckes and, because Ms. Johnson-Ruckes attended his arraignment, she likely learned that he was initially charged with first-degree murder.  Ms. Johnson-Ruckes ultimately deliberated Petitioner's case and served as the jury foreperson.

6

2:01-cv-71602-AC   Doc # 37   Filed 05/04/11   Pg 7 of 22   Pg ID 1124

The Michigan Court of Appeals pointed out on review of this claim that Petitioner did not challenge Ms. Johnson-Ruckes for cause, nor exercise a peremptory challenge as to her, and he expressed satisfaction with the jury at the end of jury selection. The Court of Appeals concluded that Petitioner had failed to preserve his claim for review and that it knew of no rule requiring the trial court to sua sponte dismiss a juror for cause.

"The Sixth Amendment secures to criminal defendants the right to trial by an impartial jury." Skilling v. United States, __ U.S. __, __, 130 S. Ct. 2896, 2912 -13 (2010). However, "[d]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. . . . Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." Smith v. Phillips, 455 U.S. 209, 217 (1982).

The record indicates that Ms. Johnson-Ruckes knew the trial judge in this case because the judge was a former 36th District Court judge. There is no indication that they were personal friends, however. (Tr. Oct. 30, 1997, at 39.) And although Ms. Johnson-Ruckes admitted during voir dire that she saw Petitioner when he was arraigned, she stated in response to defense counsel's questions that she did not think it would be difficult to render a fair and impartial verdict even though she may have seen Petitioner previously. She went on to assure defense counsel that she would be able to put aside her previous encounter with Petitioner and consider the evidence or lack of evidence when she deliberated the case. (Id. at 62-63.) Defense counsel subsequently asked the jury panel whether any of the prospective jurors would assume that Petitioner

7

was guilty simply because he was on trial.  No one answered in the affirmative.  (Id. at 77.)

Petitioner has failed to demonstrate that the presence of Ms. Johnson-Ruckes on his jury prejudiced him.  The record indicates that Johnson-Ruckes was capable and willing to decide the case on the basis of the evidence at trial.  Her presence on Petitioner's jury did not deprive him of a fair and impartial jury.  Petitioner therefore has no right to relief on the basis of his first claim.

### B.  Juror Misconduct

Petitioner says that the trial court should have granted a mistrial when a juror admitted to discussing the case with a third party during a break in the jury's deliberations.  The Michigan Court of Appeals concluded on review of this claim that the trial court handled this matter in an appropriate manner.

No juror should be subjected to extraneous influences, because juries have the right  "to operate as freely as possible from outside unauthorized intrusions purposefully made." Remmer v. United States, 350 U.S. 377, 382 (1956).  To prevail on his claim, Petitioner must show that the juror's contact with a third party gave rise to an extraneous influence that tainted the jury deliberations "with information not subject to a trial's procedural safeguards."  United States v. Herndon, 156 F.3d 629, 636 (6th Cir. 1998).

After the jurors deliberated for a day, they reported that they could not reach a verdict.  The trial court set them home for the day and told them to resume deliberations in the morning.  On the following day, the jury foreperson reported that someone had approached juror Dewitt Small and engaged in a conversation with Small.  The trial

8

court subsequently questioned Mr. Small in the court's chambers.  Small explained to

the trial court and to the parties' lawyers that he had encountered a friend during the

lunch break two days earlier and that his friend informed him of a conversation he had

with Kyruden Robinson's father.[1]  Small's friend informed Small that, according to Mr.

Robinson's father, Kyruden was shot five times in the back and that the man who killed

him had thrown a book at the prosecutor during trial.

After speaking with Juror Small, the trial court questioned the other jurors.  The

foreperson stated that, although Mr. Small had mentioned the incident with his friend to

them, they had prevented him from telling them the content of that conversation.  The

trial court ordered the jury to resume deliberating, and about four hours later, they

reached a verdict.

The information which Small's friend mentioned to him was already known to the

jury.  The book-throwing incident occurred in the jury's presence  (Tr. Nov. 3, 1997, at

111-12), and the testimony at trial established that Mr. Robinson had been fired upon

five times and shot in the back three times (Tr. Oct. 30, 1997, at 165; Tr. Oct. 31, 1997,

at 104.)  Even though Juror Small admitted to the trial court that he was "struggling" with

the conversation with his friend, he admitted that his struggle was a result of not

knowing what to do about the evidence presented at trial.  He claimed that the

conversation with his friend had not impacted him.  (Tr. Nov. 5, 1997, at 9-13.)

The Court agrees with the Michigan Court of Appeals that the jury was not

subjected to an extraneous influence which tainted their deliberations.  Petitioner

---

[1] Kyruden's father was actually deceased, but the person who spoke to juror
Small thought that he had spoken to Kyruden's father.

9

therefore has no right to habeas corpus relief on the basis of his claim about Juror Dewitt Small.

### C. Juror Strike Method

Petitioner alleges that the trial court abused its discretion and deprived him of a fair trial by permitting the attorneys to exercise multiple challenges to the venire before empaneling new potential jurors to fill the vacancies. Petitioner claims that this method of empaneling a jury violated the Michigan Court Rules. The Michigan Court of Appeals concluded on review of this claim that reversal was not required, given the fact that Petitioner did not object to the process and was not obligated to exercise multiple challenges or to exercise a peremptory challenge before the jury panel was reconstituted.

"Jury selection procedures, including the manner in which peremptory challenges are exercised, are traditionally left to the discretion of the [trial] courts." United States v. Delgado, 350 F.3d 520, 524 (6th Cir. 2003). Furthermore, the alleged violation of state law is not a basis for habeas corpus relief because federal habeas courts are "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). "A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." Pulley v. Harris, 465 U.S. 37, 41 (1984). Petitioner therefore has no right to relief on the basis of his claim about the trial court's method of conducting voir dire.

### D. Evidentiary Issue

Petitioner contends that the trial court abused its discretion by permitting the

prosecutor to admit evidence that he avoided arrest for more than a year after the crime. Petitioner contends that this evidentiary error violated his constitutional rights to due process and a fair trial. The Michigan Court of Appeals stated on direct review of this claim that, although Petitioner initially objected to evidence of evading discovery, he waived review of this issue by not making an additional objection or request for relief after the prosecution established a foundation for the testimony.

"Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." McAdoo v. Elo, 365 F.3d 487, 494 (6th Cir. 2004) (citing Estelle v. McGuire, 502 U.S. at 68-70). Although the Supreme Court and the Court of Appeals for the Sixth Circuit have expressed skepticism about the probative value of flight evidence, Parker v. Renico, 506 F.3d 444, 450 (6th Cir. 2007), the evidence can be relevant, United States v. Scheffer, 523 U.S. 303, 331 (1998), and admissible to show guilt, United States v. Dillon, 870 F.2d 1125, 1126 (6th Cir. 1989).

The prosecutor asked the officer in charge of Petitioner's case why Petitioner was not placed in a line-up for over a year after the incident occurred. The officer responded that, when the police determined that Petitioner had committed the crime, they attempted to locate him, but Petitioner stayed one step ahead of them. The police set up surveillance at the school Petitioner was attending, but he stopped attending the school when he became aware of the surveillance. A warrant had already been issued by then, but the police could not find him for over a year. (Tr. Oct. 31, 1997, at 127-29, 133-35.)

11

The officer's testimony and additional evidence that Petitioner lived with his mother who did not cooperate with the police (Id. at 128) were admissible to show consciousness of guilt.  People v. Coleman, 532 N.W.2d 885, 887 (1995).  The Court therefore finds that the alleged evidentiary error was not fundamentally unfair and did not deprive Petitioner of a fair trial.

### E.  Sufficiency of the Evidence

Petitioner claims that the evidence at trial was insufficient to support his convictions and that the jury's verdict was against the great weight of the evidence.  The Michigan Court of Appeals stated on review of this claim that Petitioner had not pointed to any testimony that was patently incredible or inherently implausible and, therefore, this was not one of the exceptional cases where witness credibility was a valid basis for finding that the jury's verdict was against the great weight of the evidence.

### 1.

The contention that the weight of the evidence did not support the jury's verdict is not a cognizable claim on habeas corpus review because it is a state-law argument, and a federal habeas court is only allowed to review issues of federal law.  Nash v. Eberlin, 258 F. App'x 761, 764 n.4 (6th Cir. 2007).  The only question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).  "'Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.'"  United States v. Kelley, 461 F.3d 817, 825 (6th Cir. 2006) (quoting United States v. Spearman, 186 F.3d 743, 746 (6th Cir. 1999)).

Petitioner is not alleging that the prosecutor failed to prove the elements of the charged crimes. His contention is that the sole eyewitness's testimony was not credible and that there was no physical evidence linking him to the crime.

2.

The sole eyewitness to the crime was Kobieya Lilly, who testified that, on the afternoon of May 22, 1995, he and Kyruden Robinson were talking near Mr. Robinson's house on Monica Street in Detroit when Petitioner walked by them. Petitioner turned, pulled out a gun, and aimed the gun at Mr. Robinson. Mr. Lilly heard five gunshots, and he claimed that Petitioner fired one additional shot at him. He was not hit, but a forensic pathologist testified that Mr. Robinson died from three gunshot wounds in his back. About fifteen months later, Mr. Lilly identified Petitioner in a police line-up.

There was no testimony regarding a possible motive for the crime or explaining how the police determined that Petitioner was a suspect. There also was no testimony regarding the circumstances of Petitioner's arrest. However, "the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction." Brown v. Davis, 752 F.2d 1142, 1144 (6th Cir. 1985). A reviewing court, moreover, must avoid weighing the evidence, evaluating the credibility of witnesses, or substituting its judgment for that of the jury. United States v. Chavis, 296 F.3d 450, 455 (6th Cir. 2002).

Although Mr. Lilly described the suspect as taller and thinner than Petitioner actually was, Mr. Lilly explained at trial he had been seated when he first saw Petitioner and that he realized at the lineup, where he was able to stand directly in front of Petitioner, that Petitioner was shorter than he realized.

13

Defense counsel attempted to impeach Mr. Lilly with his comment at the preliminary examination that he was not 100% sure Petitioner was the shooter. Mr. Lilly explained at trial, however, that he had not been 100% sure of Petitioner's identity at the preliminary examination because Petitioner had put on weight. He claimed to be certain at trial that Petitioner was the man who shot at him and killed Mr. Robinson on May 22, 1995.

A rational juror could have concluded from Mr. Lilly's testimony that Petitioner shot and killed Kyruden Robinson and fired at Mr. Lilly with intent to kill him. Thus, the evidence was sufficient to sustain Petitioner's convictions.

### F. Jurisdiction Issue

Petitioner says that the trial court lacked jurisdiction to try him for assault with intent to murder Kobieya Lilly because the criminal complaint and warrant listed Kyruden Robinson as the victim, not Kobieya Lilly. Petitioner maintains that he was found guilty of a crime for which he was never charged and that the trial court was not authorized to amend the complaint and warrant.

The trial court reviewed this claim in its order denying Petitioner's motion for relief from judgment. The trial court stated that the mere fact that the complaint incorrectly listed a different victim did not negate the magistrate's finding of probable cause to bind Petitioner over to circuit court and, therefore, Petitioner's jurisdictional claim lacked merit.

The determination of whether a particular state court was vested with jurisdiction under state law is a "function of the state courts, not the federal judiciary," Wills v. Egeler, 532 F.2d 1058, 1059 (6th Cir.1976). The allegation that the trial court was not

14

authorized to amend the complaint and warrant also is a state-law claim, and "[a] claim

for relief based on state law . . . generally cannot provide grounds for federal habeas

relief." Cowans v. Bagley, __ F.3d __, __, No. 08-4393, 2011 WL 1496778, at *3 (6th

Cir. Apr. 21, 2011).  To the extent that Petitioner is claiming he lacked notice of the

charge against Kobieya Lilly, he has alleged a federal constitutional claim, because a

defendant in a criminal proceeding is entitled to "notice of the specific charge, and a

chance to be heard in a trial of the issues raised by that charge . . . ." Cole v. Arkansas,

333 U.S. 196, 201 (1948).

The criminal complaint and warrant in this case charged Petitioner in count two

with assault with intent to murder Kyruden Robinson.  During the trial court's charge to

the jury, the prosecutor pointed out that there was a typographical error in the criminal

information.  The court permitted the prosecutor to amend the complaint and then

informed the jury that the alleged assault in count two pertained to Kobieya Lilly, not

Kyruden Robinson.  (Tr. Nov. 3, 1997, at 131-33.)

Petitioner was not prejudiced by the late amendment, because his defense was

that he was at an acquaintance's home on the day of the crime.  Because of his alibi

defense, it was inconsequential whether he was charged with assaulting Kyruden

Robinson or Kobieya Lilly.  Thus, any constitutional error could not have had a

"substantial and injurious effect or influence" on the jury's verdict, Brecht v.

Abrahamson, 507 U.S. 619, 623 (1993) (quoting Kotteakos v. United States, 328 U.S.

750, 776 (1946)), and was harmless.        G.

Petitioner argues that the criminal complaint and warrant were submitted in

conclusory form without supporting affidavits or a probable cause determination in

15

violation of the State's statutory requirements.  "[F]ederal habeas corpus relief does not lie for errors of state law," Lewis v. Jeffers, 497 U.S. 764, 780 (1990), and to the extent that Petitioner is raising a claim under the Fourth Amendment, his claim is not cognizable on habeas corpus review.  Stone v. Powell, 428 U.S. 465, 482 (1976).  The Court notes, moreover, that the trial court stated on review of this claim that a signed warrant was issued and that the warrant appeared to be valid on its face.

## H.  Ineffective Assistance of Counsel

Petitioner's final habeas claim concerns his trial and appellate attorneys. Petitioner says that trial counsel's omissions amounted to ineffective assistance of counsel and that appellate counsel was ineffective for failing to assert his claims about trial counsel, as well as his jurisdictional claims, in the appeal of right.  The trial court stated on review of these claims that Petitioner raised these claims on direct appeal and that appellate counsel was not required to raise all possible claims of error on appeal.

### 1.

To prevail on a claim of ineffective assistance of trial counsel, a habeas petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."  Strickland v. Washington, 466 U.S. 668, 687 (1984).  The same standard applies to claims about appellate counsel.  Smith v. Robbins, 528 U.S. 259, 285 (2000).

To establish deficient performance, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id., 466 U.S. at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  Id., 466 U.S. at 689.

16

To demonstrate that counsel's performance prejudiced the defense, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id., 466 U.S. at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome.'"  Richter, 131 S. Ct. at 792 (quoting Strickland, 466 U.S. at 693).  However, "[t]he likelihood of a different result must be substantial, not just conceivable."  Id. (citing Strickland, 466 U.S. at 693).  "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  Id. at 788 (internal and end citations omitted).

2.

Petitioner claims that trial counsel failed to move to quash the charges on the basis of an illegal investigative arrest and on an invalid complaint, warrant, and information.  Petitioner has not explained what was illegal about his arrest or the complaint, warrant, and  information.  His "[c]onclusory allegations, without evidentiary support, do not provide a basis for habeas relief."  Prince v. Straub, 78 F. App'x 440, 442 (6th Cir. 2003).  If Petitioner is alleging that the complaint falsely charged him with assaulting Kyruden Robinson rather than Kobieya Lilly, counsel's failure to object did not amount to ineffective assistance, because the error was a clerical one, which was corrected at trial, and no prejudice resulted.

3.

Petitioner alleges next that trial counsel failed to challenge the identification of

17

him at a <u>Wade</u> hearing.[2]   Defense counsel initially requested a <u>Wade</u> hearing, apparently on grounds that there was a height differentiation among the suspects in the line-up and that Petitioner was the only person in the line-up with a full goatee.  (Tr. Aug. 11, 1997, at 4.)  Although counsel's request for a hearing was granted, he later withdrew the request.  (Tr. Aug. 27, 1997, at 3.)  Counsel's reason for withdrawing his request for a hearing is not clear from the record, but he did cross-examine Kobieya Lilly at trial about the lineup, and Mr. Lilly testified that two other men besides Petitioner had facial hair.  (Tr. Oct. 31, 1997, at 36-38.)

No mention was made of the height of the individuals in the line-up, but the police officer who conducted the line-up testified that an attorney was present to ensure the fairness of the line-up.  According to the officer, Mr. Lilly walked into the room, looked at the suspects, and pointed to Petitioner as the man who shot his friend.  Mr. Lilly did not express any reservations or say, "I'm not sure."  (<u>Id</u>. at 120-21.)

Petitioner has failed to show that the pretrial identification procedures used were unduly suggestive.  Therefore, his attorney was not ineffective for withdrawing his motion for a <u>Wade</u> hearing.

4.

Petitioner alleges that trial counsel should have objected to the trial court's <u>voir dire</u> procedures and violation of the Michigan Court Rules.  Petitioner has not demonstrated any prejudice as a result of the court's use of the "struck jury" method. Therefore, trial counsel was not ineffective for failing to object to the procedure used

---

[2]  <u>See</u> <u>United States v. Wade</u>, 388 U.S. 218 (1967).

during voir dire.

5.

Petitioner claims that trial counsel should have objected to the prosecutor's improper comments during voir dire regarding the presumption of innocence and to the prosecutor's remarks during closing arguments regarding Petitioner's character. Petitioner has not quoted the questionable remarks, nor shown where they appear in the record. The Court therefore cannot evaluate the remarks, nor determine whether defense counsel was ineffective for failing to object to them. Petitioner's conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. Prince v. Straub, 78 F. App'x at 442.

6.

Next, Petitioner claims that counsel should have moved to strike jurors Johnson-Ruckes and Small. As explained above, Ms. Johnson-Ruckes claimed that she could be fair and impartial even though she saw Petitioner at his arraignment, and Mr. Small asserted that his contact with a friend during jury deliberations did not have an impact on him. Because the two jurors did not deprive Petitioner of a fair and impartial jury, counsel's failure to object to the jurors did not amount to ineffective assistance.

7.

Petitioner contends that counsel should have objected to unsupported allegations that Petitioner got into an altercation with the victim at a park. The prosecutor alluded to this fact during his opening statement (Tr. Oct. 30, 1997, at 148-49), but there was no testimony about the altercation. And even though the deliberating jury requested information about the altercation, the trial court informed the jurors at defense counsel's

19

request that one of the attorneys may have referred to an altercation in the park, but there was no evidence about it.  (Tr. Nov. 4, 1997, at 10.)  Defense counsel was not ineffective for his handling of the situation.

### 8.

Petitioner faults trial counsel for not objecting to testimony about his attempt to evade arrest.  Defense counsel did object when the officer in charge testified that Petitioner stayed one step ahead of him as he tried to locate Petitioner.  (Tr. Oct. 31, 1997, at 127.)  Counsel did not object a second time after the prosecutor laid a foundation for the testimony.  However, as noted above, evidence of flight or attempts to evade the police are admissible in evidence.  People v. Coleman, 532 N.W.2d at 887. The prosecutor established that the relatives with whom Petitioner lived were not cooperative and that Petitioner had tried to evade a police surveillance.  The testimony was admissible, and defense counsel was not ineffective for failing to object.

### 9.

Petitioner alleges that his trial attorney should have objected to the prosecutor's improper impeachment of the only defense witness.  The prosecutor asked the witness why he did not inform the police before trial that Petitioner was at his home on the day of the crime.  (Tr. Nov. 3, 1997, at 56-57.)  This question was not improper and even if it were, the witness explained that he did not want to get involved with the police and that he chose to leave the matter up to Petitioner's attorney.  The failure to object to the prosecutor's question did not amount to ineffective assistance.

### 10.

Petitioner's final claim about trial counsel is that counsel failed to call witnesses in

20

support of his alibi defense.  Counsel did produce one alibi witness, and Petitioner has

not named any other people that his attorney could have called to establish the defense.

The Court concludes for all the foregoing reasons that trial counsel's

performance was not deficient and the alleged deficiencies did not prejudice the

defense.  Therefore, trial counsel was not ineffective, and because trial counsel

performed adequately, the Court's "inquiry is at an end; by definition, appellate counsel

cannot be ineffective for a failure to raise an issue that lacks merit."  Greer v. Mitchell,

264 F.3d 663, 676 (6th Cir. 2001).

## V.  Conclusion

For the reasons stated above, the Court finds that the state courts' adjudications

of Petitioner's claims did not result in unreasonable applications of the facts and were

not "so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement."

Richter, 131 S. Ct. at 786-87.  "[E]ven a strong case for relief does not mean the state

court's contrary conclusion was unreasonable."  Id. at 786 (citing Lockyer v. Andrade,

538 U.S. 63, 75 (2003)).  Accordingly, the petition for writ of habeas corpus [Dkt. #1] is

**DENIED**.

The Court declines to issue a certificate of appealability, because reasonable

jurists, would not debate the Court's assessment of Petitioner's claims, nor conclude

that his claims deserve encouragement to proceed further.  Slack v. McDaniel, 529

21

U.S. 473, 483-84 (2000).  Petitioner nevertheless may proceed in forma pauperis on appeal if he decides to appeal this decision.

SO ORDERED.

s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  May 4, 2011

I hereby certify that a copy of the foregoing document was mailed Jessie Jones 260563, Baraga Maximum Correctional Facility, 13924 Wadaga Road, Baraga, MI 49908 and to the attorneys of record on this date, May 4, 2011, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5160

22